John ABBOTT, Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 15732.

Missouri Court of Appeals, Southern District, Division Two.

April 27, 1989.

David Robards, Joplin, for movant-appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, John M. Morris, Asst. Attys. Gen., Jefferson City, for respondent.

FLANIGAN, Presiding Judge.

Movant John Abbott appeals from the trial court's order, entered after evidentiary hearing, overruling his Rule 27.26[1] motion to set aside a judgment and sentence for first degree murder. The conviction, based on a jury verdict, was affirmed by this court. *State v. Abbott*, 571 S.W.2d 809 (Mo.App.1978).

Movant contends that he was entitled to relief on his motion, and the trial court erred in ruling otherwise, because movant did not receive effective assistance of counsel at the jury trial. Movant claims that his trial counsel was ineffective in the following respects:

(1) Counsel failed to object to testimony given by Trooper Plunkett at the jury trial to the effect that a boot print at the scene of the murder was made by a boot owned by movant.

(2) Counsel failed to have movant's boots examined to determine the source of the dirt found on the boots.

(3) Counsel failed to impeach Deputy Sheriff McDonald, to whom movant gave an oral confession to the murder, by showing that the day following the confession McDonald sought a warrant charging movant with conspiracy to commit robbery rather than murder.

(4) Counsel failed to advise movant fully about his right to testify and the need for his testimony.

Appellate review in this proceeding is limited to a determination of whether the findings, conclusions, and judgment of the trial court are clearly erroneous. Rule 27.-26(j); *Futrell v. State*, 667 S.W.2d 404, 405 (Mo. banc 1984).

"In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced."

*Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

In support of the foregoing proposition, the court in *Sanders* relied upon *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979).

In its discussion of the "performance prong," the Court in *Strickland* said, 104 S.Ct. at 2065: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

In its discussion of the "prejudice prong," the Court in *Strickland* said, at 2068: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." The Court also said, at 2069: "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

■ Criticisms (1) and (2) of counsel's conduct will be considered together. At the evidentiary hearing, movant produced witness David Warren, who claimed to be an expert on footprint identification. War-

---

**1.** Except where otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R. Rule 27.26 was repealed, effective January 1, 1988, by order of the Supreme Court of Missouri, and new rules were adopted in lieu thereof. On the instant appeal, post-conviction relief continues to be governed by the provisions of Rule 27.26 because the sentence was pronounced prior to January 1, 1988, and movant's motion under Rule 27.26 was then pending. See Rule 29.15(m), effective January 1, 1988.

ren had reviewed the testimony given by Trooper Plunkett at the jury trial and was critical of Plunkett's testimony. Although the instant record is unclear, apparently Plunkett testified at the jury trial that a boot print found at the scene of the murder was made by one of a pair of boots owned by movant and found in movant's possession shortly after the murder. Warren challenged the reliability of Plunkett's testimony by testifying that he, Warren, saw only "class characteristics" rather than "individual characteristics" in two photographs of boot prints which were admitted during Plunkett's testimony. Movant argues that trial counsel was ineffective in failing to require the state to establish that Plunkett was an expert in footprint identification and in failing to ask Plunkett whether his testimony was based on class characteristics rather than individual characteristics.

Movant testified that he had not worn the boots since he had been in Indianapolis some time prior to the murder. Movant asserted that trial counsel was ineffective by not comparing the soil found on the boots, at the time they were seized by the officers during the investigation, with soil found at the scene of the murder. Movant described the soil at the scene as "natural sandy soil, and black gumbo dirt," and he also said, "There is no such dirt on the streets of Indianapolis."

Although movant did not testify at the jury trial, a defense witness, Loal Joiner, told the jury that defendant was present when the murder was committed. At the motion hearing movant testified that Joiner "was one of the guys that was convicted as a result of this murder," that Joiner had testified because movant wanted him to do so, and that he, movant, had asked trial counsel "to be sure and put [Joiner] on the witness stand." On cross-examination at the motion hearing movant testified:

"Q. And Mr. Joiner I believe in essence testified that yeah, you were along the night that Mr. Holder was shot and this murder occurred.

A. Yes.

Q. So there never really was any question about whether or not your foot-

prints might have been around that building somewhere, was there?

A. There never was no question about that, no."

At the motion hearing the state called movant's trial counsel as a witness. He testified that "there was never any contention about [movant] not being physically present at the scene [of the murder.]" The following testimony was then elicited from movant's trial counsel:

"Q. Okay. So really, in relation to footprint evidence of boots that being matched up to footprints, was that ever a part of anything that you wanted to prevent the jury hearing or seeing?

A. No. He, he was there at, at the scene, and Mr. Joiner testified to that."

On cross-examination at the motion hearing David Warren admitted that he did not know when the two photographs of the boot prints were taken with respect to the time when the boot prints were made in the soil. He admitted that an inspection of the boot print itself, as distinguished from a photograph taken three days after the boot print was made, would be a better basis for identification, and he also admitted that it was "quite possible" that Plunkett might have seen "the actual print in the ground."

Although the two photographs were introduced into evidence at the motion hearing, movant's boots were neither offered nor admitted. Movant makes no claim that the boots were not available for admission at the motion hearing.

This court's opinion, in the appeal from the murder conviction, shows that movant's trial counsel filed a motion to suppress, challenging the seizure of movant's boots and the voluntariness of movant's confession. The opinion states that Deputy Sheriff McDonald, like Trooper Plunkett, was of the opinion that movant's boots "matched the prints found at the scene." *State v. Abbott*, supra, at 813. Movant has made no attack upon McDonald's testimony on that point at the motion to suppress hearing or the effectiveness of movant's trial counsel in dealing with that testimony.

The trial court was at liberty to disbelieve the testimony of movant with regard to the source of the soil on movant's boots

which were not produced at the motion hearing. Movant's presence at the scene of the murder was a fact admitted by defense witness Joiner, and movant makes no complaint that trial counsel was derelict in presenting Joiner's testimony. It was, in fact, presented at movant's insistence. Trooper Plunkett's testimony with regard to the boot print was essentially cumulative of the testimony of Deputy McDonald at the motion to suppress hearing, and movant has not challenged McDonald's testimony. The instant record is silent on whether McDonald gave the same testimony at the jury trial, but movant has not shown otherwise and that testimony was available. The action of the trial court in rejecting criticisms (1) and (2) was not clearly erroneous.

■ In support of criticism (3), movant argues that the murder took place on February 24, 1976, that he was arrested later that day, and that the state's evidence at the jury trial showed that movant, on the same day, confessed to the murder. On February 25, 1976, the prosecutor filed a complaint charging movant with the felony of conspiring to commit robbery. The prosecutor did not file a murder charge against movant until March 12, 1976.

Movant argues that Deputy McDonald's testimony concerning the confession should have been impeached by movant's trial counsel based on an alleged discrepancy in McDonald's testimony. At a pretrial motion to suppress the confession, according to movant, McDonald testified that "he [McDonald] requested a murder warrant" on February 25. Movant's brief says, "Defense counsel failed to impeach McDonald with this obvious discrepancy which would have tended to establish, as [movant] has continually claimed, he made no oral confession to committing or being part of the murder."

The victim of the homicide was killed in the course of an armed robbery. *State v. Abbott,* supra, at 811. At the motion hearing movant introduced documentary evidence showing that the charge of conspiracy to commit robbery, filed against movant on February 25, 1976, was dismissed by the state on March 12, 1976, and on that date the prosecutor filed the murder

charge. The alleged "discrepancy" in McDonald's testimony was, so movant admitted at the motion hearing, brought to the attention of the court by movant's trial counsel when the motion to suppress movant's confession was argued. Movant also admitted, at the motion hearing, that McDonald, after taking movant's confession, had told the prosecutor by telephone that movant had confessed to the robbery and to the murder.

"[T]he question of impeachment of a witness is a matter of trial technique and strategy and cannot be the basis of a breach of any duty towards movant." *Hurd v. State,* 637 S.W.2d 809, 811[3] (Mo. App.1982). (Citing authorities.) See also *State v. Rutledge,* 317 S.W.2d 365, 367[8] (Mo.1958).

As the state's brief points out, the prosecutor was not obligated to file a murder complaint on the day following the confession. Although it might be argued that a delay in filing of the murder charge cast doubt upon McDonald's testimony concerning the contents of movant's confession, the fact that the prosecutor filed the conspiracy charge is consistent with McDonald's testimony. There were two offenses involved, and movant made no showing that McDonald participated in the prosecutor's decision on which charge to file first. The action of the trial court in rejecting criticism (3) was not clearly erroneous.

■ In support of criticism (4), movant argues that his trial counsel was ineffective "with his advice to movant as to whether or not movant should testify." Movant's brief says:

"[Movant's] defense was that, yes, he was there at the scene at the time of the murder but he had not gone there to commit a robbery or commit a murder and that the person who killed the victim, Joiner, had done so without the aid, encouragement or assistance of [movant]. Defense counsel committed fundamental ineffectiveness of counsel by not advising [movant] this defense would not be presented to the jury if [movant] did not take the stand in his own defense."

At the motion hearing movant admitted that his trial counsel advised movant not to

testify because of movant's prior convictions. According to movant, counsel told him, "If you get on the witness stand they're gonna ask you about all these prior convictions and that's going to look bad for the jury." Movant also testified that at the time movant believed that advice was sound and that movant himself made the decision not to take the stand. Movant also testified that "nobody knew and nobody knows today what would have happened if I had testified."

At the motion hearing, movant's trial counsel testified that movant had six felony convictions, "possibly more," and that movant had testified ineffectively at the hearing on the motion to suppress. Counsel also testified that, at movant's insistence, Joiner testified at the jury trial and that Joiner gave the testimony that movant wanted to be presented. Trial counsel also testified, at the motion hearing, that he and movant discussed thoroughly the choices movant had with regard to testifying, that movant said he did not want to testify, and that it was movant who made the decision not to do so.

Movant's decision not to testify, reached after consultation with counsel, was a matter of trial strategy. The action of the trial court in rejecting criticism (4) was not clearly erroneous.

Movant attacks the sufficiency of the trial court's findings of fact and conclusions of law on the issues presented. On the instant record there is no need to remand for additional findings and conclusions because the record, including the findings which were made, is sufficient for this court to determine the correctness of the motion court's action. See *Ford v. State*, 748 S.W.2d 837, 838–839 (Mo.App. 1988). See also *Hamm v. State*, 768 S.W. 2d 574, (Mo.App. E.D.1989).

The judgment is affirmed.

MAUS and PREWITT, JJ., concur.