**Brent L. LONDAGIN, Movant–Appellant,**

v.

**STATE of Missouri, Defendant–Respondent.**

No. 25857.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 26, 2004.

Mark A. Grothoff, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, for respondent.

JEFFREY W. BATES, Chief Judge.

Brent Londagin ("Movant") was charged with committing forcible sodomy in violation of § 566.060.[1] A jury convicted him of this offense, and he was sentenced to serve 35 years in prison. We affirmed Movant's conviction on direct appeal in *State v. Londagin,* 102 S.W.3d 46 (Mo.App.2003).

On April 18, 2003, Movant filed a *pro se* motion to vacate, set aside or correct his judgment or sentence pursuant to Rule 29.15.[2] Counsel was appointed to represent

---

**1.** All references to statutes are to RSMo (2000).

**2.** All references to rules are to the Missouri Rules of Criminal Procedure (2004).

Movant, and an amended motion was filed on July 21, 2003. Following an evidentiary hearing, the amended motion was denied by the motion court. Movant appeals, presenting a single point for our review. Movant contends he received ineffective assistance of counsel because his attorney failed to call a witness to impeach the testimony of a detective who testified for the State. We affirm.

## I. Facts and Procedural History

Movant was employed as a "life skills trainer" at the Regional Center ("Center"), in Joplin, Missouri, from July 1998 through November 1998. Movant provided independent supported life assistance to persons with disabilities who resided at the Center. One of the residents was a mentally retarded man named Joseph Waers ("Victim"). On October 29, 1998, Victim was taken to the hospital with abdominal pain and rectal bleeding. He was found to have a perforated colon, which required a permanent colostomy to repair.

In January of 2001, Joplin Police Detective Darren Gallup ("Detective Gallup") was contacted by the Center's director and asked to investigate an allegation that Victim had been sexually abused by Movant. During a meeting at the Center, Detective Gallup met with a witness who heard Movant say he engaged in forced anal intercourse with Victim.

Detective Gallup and an investigator from the Missouri Department of Health went to Movant's place of employment and interviewed him. During the interview, Movant admitted that he might have caused Victim's injuries by inserting a plunger handle into his anus. Movant then wrote out a statement containing the same admission.

In addition to Movant, Detective Gallup interviewed a number of other persons during his investigation. The details of those interviews were contained in a written police report that he prepared. Carol Willard ("Willard") was listed in the report as one of the persons Detective Gallup interviewed. Both Detective Gallup and Willard were deposed before trial.

In Detective Gallup's June 2001 deposition, he testified that he interviewed Willard in January 2001. During the interview, Willard provided the following information. Willard lived in a duplex next door to Victim. Shortly before Victim was taken to the hospital in 1998 with a perforated colon, Movant had come over and asked Willard for some laxatives. Movant said he needed the laxatives because Victim was having some trouble and was doubled over in pain. Willard also witnessed an incident in which Movant made Victim, who had difficulty ambulating, get out of a vehicle and go inside the duplex by himself without assistance.

In Willard's August 2001 deposition, she testified that she lived next door to Victim. Victim could not talk and had to have help walking. On one occasion, Willard observed Movant bring Victim and his roommate home in a pickup truck. Movant went inside the duplex with the roommate and left Victim alone in the truck. Victim had to get himself out of the truck, hold onto the vehicle for support and work his way to the porch. Once there, he crawled up the stairs and into the house by himself. She also recalled an incident in which someone came to her apartment and asked her to go get some Ex-lax for Victim because he was having cramps from constipation and was in severe pain. Willard had been interviewed by at least three different people because, in addition to the criminal prosecution against Movant, he was a defendant in a civil suit filed by Victim's mother. During the deposition, Willard

was questioned about whether she had been interviewed by Detective Gallup:

Q. And you don't remember ever talking, being asked questions or talking to a Detective Darren Gallup from the Joplin Police Department?

A. No.

. . . .

Q. Okay, now I'm going. to show you what's marked as Deposition Exhibit # 2 which is a page from the deposition taken of Detective Darren Gallup of the Joplin Police Department. Now you read that part that's enclosed in the pink, right?

A. Uh-huh.

Q. Does that refresh your recollection in any way about ever talking to Detective Darren Gallup of the Joplin Police Department?

A. If I knew whoever it is. I don't even recall that name.

Q. So you do not recall talking to Detective Darren Gallup of the Joplin Police Department after reviewing this Deposition Exhibit # 2 that I'm showing you, is that right?

A. I don't recall any of that, not unless I don't remember.

Willard was then shown Exhibit 3, another portion of Detective Gallup's deposition in which he described the information he had obtained from Willard. The following colloquy then occurred:

Q. Let me show you what's marked as Deposition Exhibit # 3 which is also a page from Detective Darren Gallup of the Joplin Police Department's deposition. Now you read through all that whole side there, the left side of that page—

A. Uh-huh.

Q. —that I've drawn the pink box around. Does any of that information, does any of that jog your memory about talking to a Detective Darren Gallup of the Joplin Police Department?

A. I don't know a Gallup, a Police Detective Gallup. I know of two lawyers I talked to, but as far as this I don't recall it. And this part right down here, I did get the laxative, but I believe this same night that (inaudible) had come to get him, I don't remember that, I don't remember when they came and got him. That's where I don't remember.

Q. So you do not remember talking to a Detective Darren Gallup of the Joplin Police Department and telling him anything that's in this Deposition Exhibit # 3, right?

A. Huh-uh.

Q. That's correct, right?

A. I remember this top part of it and the bottom part I do not recall. And I'm telling the truth, I don't recall it.

Q. Okay, you're talking about you remember the incident of—

A. The laxative.

Q. —the laxative and you remember the incident of [Victim] getting out of the vehicle?

A. Right, but this part I don't remember.

Q. But you do not remember ever talking to Detective Darren Gallup about those things, right? Is that correct?

A. Not that I recall.

At trial, the State called Detective Gallup as a witness. His testimony was brief and focused on the circumstances of how he obtained the written statement from Movant. Detective Gallup also authenticated this document, which was admitted

in evidence as State's Exhibit 1. Movant testified as a witness on his own behalf. During his testimony, he admitted that he had written State's Exhibit 1 by hand while he was being interviewed by Detective Gallup. Willard was not called as a witness by either the prosecution or defense.

After Movant was convicted of forcible sodomy, he filed *pro se* and amended Rule 29.15 motions alleging ineffective assistance of counsel. The amended motion alleged, *inter alia,* that Movant's trial counsel was ineffective because: (1) Detective Gallup was not asked whether he interviewed Willard; and (2) Willard was not called as a witness to impeach Detective Gallup's testimony. At the hearing on the motion, Movant's trial attorney acknowledged that he did not cross-examine Detective Gallup about interviewing Willard or call her as an impeachment witness because it was a collateral matter. The trial court denied relief because Movant failed to sustain his burden of establishing that the suggested impeachment would have provided him with a defense or changed the outcome of the trial. This appeal followed.

## II. Standard of Review

On appeal, our review of the denial of a Rule 29.15 motion is limited to determining whether the findings and conclusions of the trial court are clearly erroneous. Rule 29.15(k); *State v. Parker,* 886 S.W.2d 908, 933 (Mo. banc 1994). The trial court's findings and conclusions are clearly erroneous "only if, after a review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *State v. Ervin,* 835 S.W.2d 905, 928 (Mo. banc 1992).

Movant bears the burden of proving, by a preponderance of the evidence, that he received ineffective assistance of counsel.

Rule 29.15(i). In order to prevail on this claim, movant must satisfy a two-prong test: (1) his trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and (2) movant was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Kates v. State,* 79 S.W.3d 922, 924 (Mo.App.2002). Movant must satisfy both the performance and prejudice prongs of the *Strickland* test to obtain relief. *State v. Kinder,* 942 S.W.2d 313, 335 (Mo. banc 1996). If he fails to satisfy either prong, we need not consider the other, and his claim must fail. *Neely v. State,* 117 S.W.3d 731, 735 (Mo.App. 2003).

Movant bears a heavy burden in attempting to prove ineffectiveness of counsel under the first *Strickland* prong because there is a strong presumption that counsel provided competent assistance. *Deck v. State,* 68 S.W.3d 418, 425 (Mo. banc 2002). To satisfy the first prong, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. A movant can do this by pinpointing specific acts or omissions of counsel that resulted from unreasonable professional judgment, but the reviewing court must find these acts to be "outside the wide range of professional competent assistance" for the movant to be successful. *Id.* at 690, 104 S.Ct. 2052.

The second prong of the *Strickland* test is met when a movant shows that his attorney's errors affected the judgment. *Id.* at 691, 104 S.Ct. 2052. A movant can prove that the judgment was affected when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in

the outcome." *Id.* at 694, 104 S.Ct. 2052. A movant need not show that counsel's deficient conduct more likely than not altered the outcome in the case; it is sufficient to show that there is a reasonable probability a different result would have occurred. *Wolfe v. State,* 96 S.W.3d 90, 93 (Mo. banc 2003).

## III. Discussion and Decision

Although Movant's motion charges that trial counsel was ineffective for failing to ask Detective Gallup if he interviewed Willard, this assertion merely provides a foundation for Movant's real argument: his counsel provided ineffective assistance by failing to call Willard as a witness to testify that she was *not* interviewed by Detective Gallup.[3] Movant claims the trial court's denial of the 29.15 motion was clearly erroneous because impeachment of Detective Gallup in this way would have cast doubt on his credibility.[4] If trial counsel had done so, Movant suggests there is a reasonable probability the outcome of the case would have been different because "the state's case was based significantly on [Detective Gallup's] testimony...."

■ Generally, an attorney's decision concerning which persons to call as witnesses on behalf of his client is considered a matter of trial strategy, which will not support an ineffective assistance of counsel claim. *Johnson v. State,* 776 S.W.2d 456, 458 (Mo.App.1989). Moreover, the mere

failure to impeach a witness does not automatically entitle a movant to post-conviction relief. *State v. Hall,* 982 S.W.2d 675, 687 (Mo. banc 1998). A movant must establish the impeachment would have provided a defense or changed the outcome of the trial. *Id.* The trial court denied relief because it concluded that Detective Gallup's impeachment would not have provided movant with a viable defense or changed the outcome of the trial. We agree.

The only reason Movant claims Willard should have been called as a witness at trial was to deny that she had been interviewed by Detective Gallup. Movant does not explain how such testimony would have presented him with a viable defense to the charge of forcible sodomy. Accordingly, counsel was not ineffective for failing to present testimony that would merely impeach a witness for the State. *See State v. Kelley,* 953 S.W.2d 73, 94 (Mo.App.1997); *State v. Mills,* 872 S.W.2d 875, 881 (Mo. App.1994); *Webster v. State,* 837 S.W.2d 585, 588 (Mo.App.1992); *Lane v. State,* 778 S.W.2d 769, 771 (Mo.App.1989).

■ We also reject Movant's argument that, if Willard had been called as an impeachment witness, there is a reasonable probability the outcome of the trial would have been different. Detective Gallup's trial testimony was brief. He was called as a witness to explain how he obtained the written statement from Movant and to provide the foundation for its admission

---

**3.** Movant's argument assumes Detective Gallup would have testified consistently with his pretrial deposition testimony and acknowledged that he interviewed Willard during the investigation. For the purposes of addressing Movant's argument on appeal, we make the same assumption.

**4.** Movant correctly characterizes this as impeachment testimony because its sole purpose would have been to attack Detective Gallup's

credibility. "Impeachment is directed to the credibility of the witness for the purpose of discrediting him. It ordinarily furnishes no factual evidence. Contradiction, on the other hand, is directed to the accuracy of testimony and supplies additional factual evidence to be considered along with such testimony." *Talley v. Richart,* 353 Mo. 912, 185 S.W.2d 23, 26 (1945); *see Gennetten v. State,* 96 S.W.3d 143, 149 (Mo.App.2003).

into evidence. Later in the trial, Movant unequivocally acknowledged writing out the statement by hand and giving it to Detective Gallup. Therefore, we dismiss as hyperbole Movant's contention that "the state's case was based significantly on [Detective Gallup's] testimony. . . ." Furthermore, we are unconvinced that Willard's testimony would have cast substantial doubt on Detective Gallup's credibility. In his deposition, he identified Willard by name as a witness he had interviewed, and he recounted specific facts that he obtained from her. These facts were largely corroborated by Willard's own deposition testimony. Even if the jury had been apprised that Willard did not recall being interviewed by Detective Gallup—which is the most that her equivocal testimony on the subject could have been expected to accomplish—it would have had no effect on the outcome. Therefore, Movant suffered no prejudice from his attorney's failure to call Willard as an impeachment witness. *See State v. Weaver*, 912 S.W.2d 499, 519 (Mo. banc 1995) (movant was not prejudiced by counsel's failure to present evidence which would have been purely impeachment on a collateral matter of the officers' lack of attention to detail in reporting data to a chemist).

After a thorough review of the record, we do not have a definite and firm impression that a mistake was made by the motion court in denying the Movant's request for post-conviction relief. Therefore, the motion court's conclusions are not clearly erroneous. *See* Rule 29.15(k). We affirm the order overruling Movant's Rule 29.15 motion.

PARRISH, P.J., and BARNEY, J., Concur.