Jeffrey Paul SMITH, Appellant,

v.

STATE of Missouri, Respondent.

No. 27640.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 4, 2006.

229

Mark Allen Grothoff, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

Jeffrey Paul Smith (Smith) appeals from an order denying his Rule 29.15 motion to set aside his convictions of robbery in the first degree and armed criminal action after trial by the court. *See* §§ 569.020, 571.015.[1] We affirmed Smith's convictions

---

1. All references to rules are to Missouri Court Rules (2006), and all references to statutes are to RSMo (2000).

on direct appeal. *See State v. Smith,* 163 S.W.3d 63 (Mo.App.2005). Thereafter, Smith filed a timely motion for post-conviction relief pursuant to Rule 29.15. Counsel was appointed to represent Smith, and an amended motion was filed. In the amended motion, Smith alleged his convictions and sentences should be set aside because, *inter alia,* his trial counsel was ineffective for failing to impeach the victim with two prior inconsistent statements. The motion court denied the motion without an evidentiary hearing. We affirm.

## I. Standard of Review

■ Our review of the denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are "clearly erroneous." Rule 29.15(k); *State v. Tokar,* 918 S.W.2d 753, 761 (Mo. banc 1996). Findings of fact and conclusions of law are clearly erroneous only when, after reviewing the entire record, this Court is left with the definite and firm impression that a mistake has been made. *State v. Taylor,* 929 S.W.2d 209, 224 (Mo. banc 1996). "Just as in a direct appeal, we must view the facts in the light most favorable to the verdict." *Coday v. State,* 179 S.W.3d 343, 346 (Mo. App.2005). Therefore, we accept as true all evidence and inferences favorable to the verdict and disregard all contrary evidence and inferences. *Rousan v. State,* 48 S.W.3d 576, 595 (Mo. banc 2001); *Coday,* 179 S.W.3d at 346–47.

■ The real issue presented by Smith's appeal is whether the trial court erred in refusing to grant him an evidentiary hearing on the above-described claims, not whether he is actually entitled to relief. *Bryan v. State,* 134 S.W.3d 795, 798 (Mo.App.2004). To be entitled to an evidentiary hearing, Smith must: (1) allege facts, not conclusions, that would warrant relief if true; (2) these facts must raise matters not refuted by the record and files in the case; and (3) the matters complained of must have resulted in prejudice to Smith. *Barnett v. State,* 103 S.W.3d 765, 769 (Mo. banc 2003). If the files and records of the case conclusively show that Smith is not entitled to any relief, no evidentiary hearing is required. Rule 29.15(h); *Barnett,* 103 S.W.3d at 769.

In *State v. Smith,* 163 S.W.3d 63 (Mo. App.2005), we set forth in detail the underlying facts which resulted in Smith's aforementioned convictions. Therefore, in this opinion, we will recount only the facts relevant to the issues presented in this second appeal.

## II. Discussion and Decision

Smith's Rule 29.15 motion alleged ineffective assistance by his trial counsel. The burden of proving these claims rests on Smith. Rule 29.15(i). To establish ineffective assistance of counsel, Smith must show that: (1) counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and (2) counsel's poor performance prejudiced the defense. *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998). To demonstrate prejudice, Smith must allege facts showing a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.; Wilkes v. State,* 82 S.W.3d 925, 927–28 (Mo. banc 2002). Smith must prove each portion of this two-pronged performance and prejudice test in order to prevail on his ineffective assistance of counsel claim. *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987). "[A] court need not determine the performance component before examining

for prejudice. If it is easier to dispose of the claim on the ground of lack of sufficient prejudice, the reviewing court is free to do so." Id.

■ Although Smith describes his trial counsel's alleged ineffective assistance in terms of failing to present the victim's prior inconsistent statements, Smith is essentially arguing his trial counsel provided ineffective assistance by failing to impeach the victim with his own prior inconsistent statements for the purpose of discrediting him. *See Londagin v. State*, 141 S.W.3d 114, 119 n. 4 (Mo.App.2004); *Gennetten v. State*, 96 S.W.3d 143, 149 (Mo.App.2003). "It is well-settled that counsel's failure to impeach a witness will not constitute ineffective assistance of counsel unless this action would have provided the defendant with a viable defense or changed the outcome of the trial." *Coday v. State*, 179 S.W.3d 343, 352 (Mo.App.2005); *State v. Ferguson*, 20 S.W.3d 485, 506–07 (Mo. banc 2000). This review of the controlling law affords a proper backdrop against which to begin our consideration of the specific issues raised by Smith's two points relied on.

### Point I

■ In Smith's first point, he contends trial counsel was ineffective for failing to present the victim's initial statement made to police that the victim did not believe anything was taken from his wallet during the robbery. Smith argues this statement was admissible as a prior inconsistent statement to impeach the victim's trial testimony that he was robbed. Smith's argument is based on the following facts.

On November 10, 2002, Officer Kevin Brown (Officer Brown) interviewed Paul Nation (Victim), who was 87 years old, at his home after a report that a robbery occurred there earlier that evening. Victim reported that a young female and male came over to his residence. Victim knew the female, who asked to use the phone. While in the kitchen, facing the female, Victim felt himself being struck in the head several times from behind by the male. Bleeding from his head, he felt the male take the wallet from his back pocket. When Victim turned around to face his attacker, he saw his wallet on the floor, and both the female and male running out the front door of his house. Victim said "he checked and didn't believe anything was taken from his wallet." Thereafter, Victim was transported to a local hospital. Officer Brown later interviewed Smith, who admitted being at Victim's residence on the night in question but claimed it was the female, who "suddenly produced a tire tool style metal object and began striking the elderly gentleman over the head with it."

At trial, Victim was the first witness to testify. On direct examination, Victim testified that everything except five dollars was taken from his wallet:

Q: Did he take anything after he hit you on the head? Did he take anything?

A: Uh, my wallet was laying on the table open with a five dollar bill on it, and everything else was gone.

Q: Where was your wallet before you got hit on the head?

A: I don't know how much he took, but he took all but five bucks. I don't know why he left that. Make me think he hadn't robbed me, I guess.

Q: Where did he—where was the wallet before you got hit on the head?

A: Pardon me?

Q: Where was your wallet before you got hit on the head?

A: My wallet was in my pocket.

Q: Do you remember the person who hit you—hit you on the—do you

remember the person that hit you on the head taking your wallet?

A: Un, no. I was kind of knocked out there, and, uh, kind of got squared around sort of laying on the table. But he must have hit me, and then grabbed my wallet at the same time.

On cross-examination, defense counsel questioned Victim about what was taken from his wallet:

Q: All right. [Victim], what exactly was taken from your wallet?

A: What was taken from my wallet?

Q: Yes, sir.

A: When I was robbed? Well, practically everything, but it was laying there open with a five dollar bill laying on top, and all the money was gone and some of the papers.

Q: Okay. What—

A: Well, I guess everything wasn't gone, but he took some of it.

Q: Okay. What—what money was gone; do you recall?

A: I don't know how much I had in there.

Q: Are you sure you had money in there?

A: Yeah.

Q: What papers were gone?

A: Pardon me?

Q: What papers were gone?

A: I don't even remember.

Q: Do you ever recall telling any police officers that nothing was taken?

A: Did I what?

Q: Do you recall ever telling any police officers that nothing was taken?

A: Well, now, I don't remember. I don't know. I guess since that bump on the head it knocked my memory haywire. Uh, I don't know. It's just—it's just hard to remember those details.

Officer Brown also testified. On cross-examination, defense counsel attempted to question Officer Brown about Victim's initial statement regarding what was taken from his wallet:

Q: Officer Brown, in your investigation were you able to determine whether or not anything was taken from [Victim]?

A: Um, based on his—

[Prosecutor]: Objection, Your Honor, this is calling for hearsay. He'd be testifying as to what [Victim] knew what was taken or did not know was taken.

THE COURT: I guess it's sustained. I assume that you—well, I guess, I'm not assuming. I'll sustain it.

Thereafter, Smith's trial counsel did not make any further attempt to present evidence as to what Victim initially told Officer Brown about whether anything was taken from his wallet.

 In Smith's amended motion, he argued that trial counsel was ineffective for failing to respond to the prosecutor's hearsay objection by explaining that Victim's statement to Officer Brown was a prior inconsistent statement that qualified as an exception to the hearsay rule and was admissible under § 491.074.[2] Smith ar-

---

**2.** A prior inconsistent statement is admissible as substantive evidence under § 491.074 "as soon as the inconsistency appears from the testimony." *State v. Archuleta*, 955 S.W.2d 12, 15 (Mo.App.1997); *State v. Cravens*, 132 S.W.3d 919, 924 (Mo.App.2004). The founda-

tion for a prior inconsistent statement is an inquiry of the witness: (1) whether the witness made the statement and, (2) whether the statement is true. *State v. Wolfe*, 13 S.W.3d 248, 261 (Mo. banc 2000); *Archuleta*, 955 S.W.2d at 15. "[I]f a witness professes not to

gues that, if trial counsel had offered Officer Brown's testimony as a prior inconsistent statement by Victim: (1) the trial court would have been obligated to overrule the prosecutor's objection; and (2) Officer Brown would have testified that Victim told him he did not believe anything had been taken from his wallet. According to Smith, he was prejudiced by trial counsel's failure because such evidence would have supported the defense's theory that no robbery occurred.

The motion court, which was the same court that conducted the bench trial below, disagreed with Smith's argument and denied relief without an evidentiary hearing. The court explained:

> Trial counsel, as indicated above, did ask the victim about the prior statement to the police that he initially did not believe anything had been taken. The victim stated he could not recall whether he had made the statement or not, leaving open the possibility that the statement had been made. Considering the totality of the circumstances, however, it is highly unlikely that the outcome of the case would have been [affected] by counsel's failure to confirm with the officer the victim's prior inconsistent statement. The Officer testified that he [had] been dispatched to a robbery that had just occurred and spoke briefly with the victim before he was transported to the hospital. He observed lacerations on the elderly man's head and there was blood on the victim's head, his clothes and his hands. He then went to the hospital and spoke further with the victim. It is not clear whether the victim had any opportunity to even examine the contents of his wallet prior to speaking to the police. It would not be at all

unreasonable to assume that the actual determination of loss was made later. Victim testified repeatedly that he did not know what papers had been taken, or how much money he had in the wallet, or how much money had actually been taken. The inconsistency in his initial statement to the police is of relatively minor significance when taken in context. Movant's defense was that the woman who accompanied him to the residence had committed the robbery, not that nothing was taken from the victim. Movant has not established prejudice on this point.

(Transcript references omitted.)

Smith contends the motion court clearly erred in denying his claim without an evidentiary hearing because he alleged facts, not conclusively refuted by the record, that would entitle him to relief. Smith argues he established prejudice by alleging his trial counsel's failure to impeach Victim with his prior inconsistent statement. Smith contends that Victim's initial statement that he didn't believe anything was taken from his wallet was "critical to the outcome of this case." We disagree.

Victim did testify that he was hit on the head and robbed. In his own direct examination, however, he admitted that he had very significant problems with his memory. As Victim put it, "I can't remember anything" and "my memory's shot." Victim could not even recall his own address and had to take a document out of his wallet in order to state where he lived. On cross-examination, defense counsel continued to demonstrate numerous other deficiencies in Victim's ability to recall what had happened. Under these circumstances, the record conclusively refutes

remember if a prior statement was made or not made, a proper foundation has been laid to admit the prior inconsistent statement."

*State v. Jones,* 652 S.W.2d 880, 882 (Mo.App. 1983); *Archuleta,* 955 S.W.2d at 16.

Smith's argument that the proposed further impeachment of Victim with his initial statement to Officer Brown "creates a reasonable probability that the trial's outcome would have been different." *Coday v. State,* 179 S.W.3d 343, 352 (Mo.App.2005); *see also Hill v. State,* 160 S.W.3d 855, 863 (Mo.App.2005) (any inconsistency in witness' trial testimony and prior statement, if brought forth at the trial, would not have any affect on decision); *Londagin v. State,* 141 S.W.3d 114, 120 (Mo.App.2004) (impeachment would have no effect on the outcome). Therefore, Smith has failed to establish prejudice and is not entitled to an evidentiary hearing on his claim. *See Barnett v. State,* 103 S.W.3d 765, 769 (Mo. banc 2003); Rule 29.15(h). The motion court's findings and conclusions in this regard are not clearly erroneous. Point denied.

### *Point II*

■ In Smith's second point, he contends trial counsel was ineffective for failing to introduce another prior inconsistent statement by Victim. The amended motion alleged that, at the preliminary hearing, Victim testified that he could not see what was used to hit him in the head during the robbery. At trial, Victim gave the following testimony:

Q: What do you remember about getting hit on the head?

A: Well, the guy was sitting at my kitchen table and up and pulled a— some kind of a club out of—what do they call that? Some kind of a car stick or something and hit me over the head with it.

After Smith was arrested, he told Officer Brown that Victim had been hit on the head by a female who asked Smith to take her to Victim's house. According to Smith, the female suddenly produced "a tire tool style metal object" and began striking Victim over the head with it. When Officer Brown checked Smith's vehicle, the tire iron was missing.

Smith argues that Victim's statement at the preliminary hearing was admissible to impeach Victim's trial testimony that he was hit with a "car stick." Smith argues that he was prejudiced by trial counsel's failure to do so because such evidence would have shown that Victim was adopting statements he heard from others as his own testimony at trial, which would have cast doubt on his purported recollection of the charged events. The motion court disagreed with Smith's argument and denied relief without an evidentiary hearing. The court explained:

Movant asserts that if trial counsel had impeached the victim with his prior inconsistent statement regarding the instrument used to strike the blows, it would have "cast doubt on his purported recollection of the charged events". There was no doubt that victim, in fact, had very little recollection of the events that occurred aside from the fact that "a guy" had hit him in the head and taken his money and some papers. That was clear from the victim's testimony and needed little reinforcement. The actual identification of the instrument was provided by Movant, who told the police he had seen the woman accompanying him take out a "tire tool style metal object" and begin striking the victim on the head. The single consistency in the victim's testimony was that it was a male, not a female, who had struck him in the head and taken his money. It was Movant's identification of the tire iron and the officer's subsequent determination that Movant's tire iron was missing from his vehicle that provided the essential element of the weapon, not the victim's

testimony on this point. Again, Movant has not established any prejudice.

(Transcript references omitted.)

We conclude that the motion court's findings and conclusions are not clearly erroneous. "If a prior inconsistent statement by a state's witness does not give rise to a reasonable doubt as to defendant's guilt, such impeachment evidence is not the basis for a claim of ineffective assistance of counsel." *State v. Twenter,* 818 S.W.2d 628, 640 (Mo. banc 1991); *Coday v. State,* 179 S.W.3d 343, 352 (Mo.App. 2005). The primary identification of a tire iron as the implement used to strike Victim came from Smith himself, via his statement to Officer Brown. Victim's trial testimony that he was hit with a "car stick" was cumulative of Brown's testimony. Smith's counsel cannot be found ineffective for failing to impeach Victim on a cumulative and undisputed matter. *See, e.g., Coday,* 179 S.W.3d at 353; *Abbott v. State,* 769 S.W.2d 462, 464–65 (Mo.App.1989).

After reviewing the entire record, we do not have a definite and firm impression that a mistake was made. Therefore, the findings and conclusions of the motion court are not clearly erroneous. *See* Rule 29.15(k); *State v. Taylor,* 929 S.W.2d 209, 224 (Mo. banc 1996). No evidentiary hearing was required because the record conclusively refutes Smith's contention that he is entitled to relief. *See Barnett v. State,* 103 S.W.3d 765, 769 (Mo. banc 2003); Rule 29.15(h). Accordingly, Smith's second point on appeal is denied, and the trial court's order denying his Rule 29.15 motion without an evidentiary hearing is affirmed.

GARRISON and BARNEY, JJ., Concur.