

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| PHILLIP G. PAYNE, | ) |
| | ) |
| Appellant, | ) |
| | ) WD79051 |
| v. | ) |
| | ) OPINION FILED: |
| | ) November 22, 2016 |
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Clay County, Missouri
The Honorable Shane T. Alexander, Judge**

**Before Division Two:** Lisa White Hardwick, Presiding Judge, and
Karen King Mitchell and Anthony Rex Gabbert, Judges

Phillip Payne appeals, following an evidentiary hearing, the denial of his Rule 29.15 motion for post-conviction relief.[1] Payne claims that trial counsel provided ineffective assistance by: (1) failing to more fully cross-examine the victim; and (2) advising Payne not to testify at trial. The motion court rejected Payne's claims. Finding no error, we affirm.

---

[1] All rule references are to the Missouri Supreme Court Rules (2016).

## Background

Following a jury trial, Payne was convicted of one count of statutory sodomy,[2] for which he was sentenced to twenty-five years' imprisonment. *State v. Payne*, 414 S.W.3d 52, 53 (Mo. App. W.D. 2013), *abrogated by Hoeber v. State*, 488 S.W.3d 648 (Mo. banc 2016). The facts underlying Payne's conviction are laid out in the opinion we issued in Payne's direct appeal, *id.*, and will be discussed only to the extent necessary to resolve his post-conviction claims.

At trial, the State offered testimony from Victim, Victim's parents, and Victim's school counselor. During cross-examination of Victim, trial counsel pointed out numerous inconsistencies in Victim's description of the events leading to Payne's conviction. Trial counsel's questioning led to Victim's admissions that (1) he did not really remember a lot about the events, but was just telling it the way he assumed it had happened; (2) he had a lot of problems remembering things; (3) some of his memories were not real; (4) he fabricated some details because they "sounded good"; (5) he lied to his parents about Payne; and (6) he remembered only three occurrences despite telling others that there were five. Trial counsel pointed out the various discrepancies during closing argument and advised the jury, "[Victim] told you he lied numerous times. If you can't believe some things, you can't believe any of it." During the hearing on Payne's motion for new trial, the court indicated:

> [W]ith regard to the sufficiency of the evidence, the Court agrees with defendant that the list of inconsistencies and inaccuracies in the victim's testimony as compared to, testimony before the jury as compared to previous statements, some made under oath, some not, is extensive, and probably the most extensive this Court's ever encountered on the bench or prior to being on the bench.

Before the close of evidence, upon learning that Payne did not intend to testify, the trial court questioned Payne about his decision:

---

[2] Section 566.062.1, RSMo 2000. All statutory citations are to the Revised Statutes of Missouri 2000, as updated through the current Cumulative Supplement.

2

THE COURT: All right. Mr. Payne, have you heard what your attorney's told me?

THE DEFENDANT: Yes, I have.

THE COURT: It's my understanding that you have decided not to testify in this trial, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Have you had enough time to discuss that with your attorney?

THE DEFENDANT: I have.

THE COURT: Have you had enough time to think about it on your own?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: All right. Having had enough time to talk to your own attorney about it and to think about it on your own, it's your decision to not testify in the case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you have the right to testify?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: Is there anything else you wish to tell me about that?

THE DEFENDANT: No.

Following the sentencing hearing, the trial court questioned Payne about counsel's representation:

THE COURT: Do you have any complaints at all about how you've been represented?

THE DEFENDANT: No.

THE COURT: If so, you understand now's the time to tell me. Do you understand that?

THE DEFENDANT: Yeah.

. . .

THE COURT: So other than the inability to find your sister and the other witnesses, are you telling the Court that you're well satisfied with your representation?

THE DEFENDANT: Yes.

THE COURT: All right. The Court's already made comment on the cross examination in the case. The Court believes that it was extraordinarily well done. The Court does find and believe that there is no probable cause to believe that you received ineffective assistance of counsel, that the trial counsel did an extraordinary job overall.

Payne's conviction and sentence were affirmed on direct appeal. *Payne*, 414 S.W.3d at 57.

He thereafter filed a *pro se* Rule 29.15 motion, which was amended by appointed counsel. Among the claims asserted in the amended motion were claims that trial counsel provided ineffective assistance in failing to further cross-examine Victim and in advising Payne not to testify. The motion court held an evidentiary hearing, wherein it received testimony from both trial counsel and Payne on the relevant claims.

Trial counsel testified that Victim's credibility was very important in the case and that her goal in cross-examining him was "to discredit him and to show the jury that he was not reliable." Payne then presented counsel with three additional alleged inconsistencies in Victim's testimony and asked if she had any particular strategic reason for not introducing them.[3] With each one,

---

[3] Payne addressed seven additional alleged inconsistencies, but he presented evidence on only four, and one of the four was not included in his amended motion and, therefore, was not properly before the motion court. The alleged inconsistencies that Payne has preserved involve (1) whether Victim recognized that he was being subjected to sexual abuse immediately or sometime later; (2) whether Payne physically moved Victim into position or whether Victim moved himself in accordance with Payne's commands; and (3) whether Victim knew Payne was removing his own pants during the first incident.

counsel indicated that she did not have a strategic reason for not questioning Victim about those specific inconsistencies.

When asked about her advice to Payne not to testify, trial counsel indicated that they decided together that his testimony was unnecessary:

Q. What was your understanding of whether Phillip Payne wanted to testify?

A. From what I remember, we of course discussed it. I always tell all of my clients that decision should be made after we hear all the State's evidence so that we know what we've got, and then of course it's always up to my client. In this case I don't think he was real excited to get up on the stand, but if he felt he needed to, if we decided and again, it's ultimately his decision, but if we talked about it and he needed to testify, he would.

Q. Now well, okay. So what advice did you give to [Payne] about whether he should testify when that ultimate decision was being made?

A. The ultimate decision was made after all of the State's evidence. Due to [Victim]'s testimony, I did not think it was necessary for [Payne] to get up and say he didn't do this. We were, we had put, he had pled not guilty. We were at a jury trial. Obviously he's saying he didn't do this. Again, [Victim]'s testimony was so all over the place and, I did not think, credible that I did tell [Payne], I don't think you need to testify.

Trial counsel testified that she simply "didn't see that it would help him to testify."

Payne then questioned trial counsel about whether she had considered using Payne's prior stealing and drug-related convictions to reinforce her argument that Payne had never been left home alone with the children; trial counsel indicated that she had not. Payne also asked counsel whether she had advised Payne of other sex cases where defendants had been convicted even though the victims had recanted; again, trial counsel indicated she had not. Finally, Payne asked counsel if she had prepared Payne to testify, and counsel indicated that she did not.

Payne testified at the evidentiary hearing, indicating that he wished to testify at trial but accepted trial counsel's advice at the close of the State's evidence that his testimony was unnecessary. He further indicated that, if he had known his prior convictions could be used

5

favorably or that other defendants had been convicted on less evidence, he would have chosen to testify.

The motion court overruled Payne's Rule 29.15 motion, finding that Payne had failed to meet his burdens of proving both deficient performance or resulting prejudice. Payne appeals.

## Standard of Review

"Appellate review of the denial of a Rule 29.15 motion is limited to a determination of whether the findings of fact and conclusions of law of the motion court are clearly erroneous." *Hays v. State*, 484 S.W.3d 121, 126 (Mo. App. W.D. 2015). "The motion court's findings and conclusions are presumed to be correct." *Id.* "To overturn the motion court's judgment, the appellate court must be left with a 'definite and firm impression that a mistake has been made.'" *Id.* (quoting *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009)).

## Analysis

Payne brings four claims on appeal. In Points I and II he argues that the motion court erred in finding neither deficient performance (Point I) nor resulting prejudice (Point II) from counsel's failure to further cross-examine Victim. In Points III and IV, Payne argues that the motion court erred in finding neither deficient performance (Point III) nor resulting prejudice (Point IV) from counsel's advice that Payne not testify at trial. We affirm.

"To be entitled to post-conviction relief for ineffective assistance of counsel, the movant must satisfy a two-prong test." *Id.* (quoting *Zink*, 278 S.W.3d at 175). "First, the movant must show that his counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would exercise in a similar situation." *Id.* (quoting *Zink*, 278 S.W.3d at 175). "Second, the movant must show that he was prejudiced by trial counsel's failure." *Id.* "Both of these prongs

6

must be shown by a preponderance of the evidence in order to prove ineffective assistance of counsel." *Id*. (quoting *Zink*, 278 S.W.3d at 175).

"To meet the performance prong . . . , [a movant] must overcome a strong presumption that trial counsel's conduct was reasonable and effective." *Id*. "To overcome this presumption, [the movant] must point to specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id*. (quoting *Zink*, 278 S.W.3d at 176).

"To satisfy the prejudice prong . . . , [a movant] must demonstrate that, absent the claimed errors, there is a reasonable probability that the outcome would have been different." *Id*. (quoting *Zink*, 278 S.W.3d at 176). "If either the performance prong or the prejudice prong is not met, then we need not consider the other . . . ." *Id*.

## A. Payne failed to demonstrate that counsel provided ineffective assistance in failing to further cross-examine Victim.

In his first and second points, Payne argues that the motion court erred in not finding counsel to be ineffective in failing to further cross-examine Victim with three additional alleged inconsistencies. We disagree.

"Counsel's decision as to the extent of the impeachment of a witness is a matter of trial strategy." *Laub v. State*, 481 S.W.3d 579, 585 (Mo. App. S.D. 2015). "In virtually every case, the extent of cross-examination must be left to the judgment of counsel." *Id*. at 585-86 (quoting *White v. State*, 939 S.W.2d 887, 897 (Mo. banc 1997)). "[T]rial counsel's failure to impeach a witness, without something more, does not warrant post-conviction relief." *Tucker v. State*, 468 S.W.3d 468, 474 (Mo. App. E.D. 2015).

Here, despite the extensive impeachment of Victim that trial counsel engaged in, Payne has identified three additional areas of potential impeachment that trial counsel did not pursue: (1)

whether Victim recognized that he was being subjected to sexual abuse immediately or sometime later; (2) whether Payne physically moved Victim into position or whether Victim moved himself in accordance with Payne's commands; and (3) whether Victim knew Payne was removing his own pants during the first incident. Trial counsel indicated that she had no strategic reason for not addressing these particular matters during cross-examination. But, despite trial counsel's lack of strategic reason as to these three specific areas of inquiry, trial counsel testified that her strategy as a whole was "to discredit [Victim] and to show the jury that he was not reliable." And the trial court found counsel's cross-examination to be "extraordinarily well done," resulting in "the most extensive [list of inconsistencies and inaccuracies in the victim's testimony] this Court's ever encountered on the bench or prior to being on the bench." Though the jury ultimately believed Victim's claim that Payne sodomized him, a strategy may not be deemed unreasonable merely because it is unsuccessful. *Sykes v. State*, 372 S.W.3d 33, 42 (Mo. App. W.D. 2012) (holding that the success or failure of a trial strategy "is not the measure of reasonable[ness]").

"Judicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. "Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." *Id*. at 690.

Payne's argument that counsel should have presented additional impeachment evidence amounts to nothing more than second-guessing counsel's methods for carrying out her reasonable trial strategy simply because his defense was ultimately unsuccessful. We find no error in the motion court's determination that Payne failed to meet his burden of proving that trial counsel performed deficiently. Point I is denied.

But even if counsel's performance could be deemed deficient, Payne's claim still does not warrant relief because he has failed to prove any resulting prejudice from counsel's alleged failure. "If a prior inconsistent statement by a [S]tate's witness does not give rise to a reasonable doubt as to Movant's guilt, such impeachment evidence is not the basis for a claim of ineffective assistance of counsel." *Johnson v. State*, 406 S.W.3d 892, 904 (Mo. banc 2013) (quoting *State v. Twenter*, 818 S.W.2d 628, 640 (Mo. banc 1991)). "The failure to impeach a witness will not constitute ineffective assistance of counsel unless such action would have provided a viable defense or changed the outcome of the trial." *Thompson v. State*, 437 S.W.3d 253, 263 (Mo. App. W.D. 2014).

Payne argues that the motion court's prejudice analysis erroneously determined that the case was not a close one. Though we would agree with Payne that cases such as his, where the evidence largely consists solely of a victim's word against the defendant's, are generally considered "close" ones, Payne mischaracterizes the motion court's determination. In response to Payne's claim that "this was an exceptionally close case," the motion court determined that *the jury* apparently did not find the case to be close in light of the facts that it still convicted Payne despite counsel's extensive cross-examination and impeachment of Victim, it did so after a relatively brief deliberation, and there was no indication that any of the jurors struggled with that determination. Thus, contrary to Payne's argument, the motion court did not indicate that this was

9

not a close case; rather, the motion court determined that the jury obviously did not feel it was a close case.

In any event, Payne fails to demonstrate how any of the areas of inquiry he relies on would have provided him with a defense or changed the outcome of the trial, had counsel raised them. As discussed previously, trial counsel was able to elicit admissions from Victim that his memory was not good, that some of his memories were false, and that some of them were even fabricated to "sound good." If this information did not discredit Victim in the juror's minds, we find it extremely unlikely that the additional areas of inquiry (none of which addressed any elements of the charged crime) would have made any difference.[4] Point II is denied.

## B. Payne failed to prove that counsel provided ineffective assistance in advising Payne not to testify.

In his third and fourth points, Payne argues that trial counsel provided ineffective assistance in advising Payne not to testify in his own defense. Again, we disagree.

"The decision whether or not to place a defendant in the witness chair is a difficult one." *Meuir v. State*, 182 S.W.3d 788, 793 (Mo. App. S.D. 2006). "It has been repeatedly held that[,] when a criminal defendant has knowingly and voluntarily waived his right to testify, absent extraordinary circumstances, an ineffective assistance of counsel claim will not lie in defense counsel's decision not to call him as a witness." *Id.* "'[A]lthough the decision to testify rests solely with the defendant, a defendant is entitled to receive reasonably competent advice'

---

[4] In arguing that he was prejudiced, Payne relies heavily on *Black v. State*, 151 S.W.3d 49, 56 (Mo. banc 2004). In *Black*, the Missouri Supreme Court found that the defendant was prejudiced by his counsel's failure to address prior inconsistent statements of the State's witnesses during cross-examination. *Id.* But, unlike the statements Payne relies on, the statements at issue in *Black* "related directly to the central issue of whether Mr. Black acted with deliberation or in a fit of rage or out of self-defense." *Id.* In other words, they went directly to one of the elements of the charged crime (the mental state), which "was the key issue in contention between the parties" and would have provided the defendant with a viable defense to the charge. *Id.* Here, nothing in the alleged inconsistencies that Payne has identified either addresses an element of the charged crime or would have provided him with a viable defense. Thus, *Black* does not support his claim.

regarding his decision to testify." *Blair v. State*, 402 S.W.3d 131, 139 (Mo. App. W.D. 2013) (quoting *Hurst v. State*, 301 S.W.3d 112, 118 (Mo. App. E.D. 2010)). "Therefore, 'trial counsel's advice whether to testify is [generally] a matter of trial strategy, and does not constitute a ground for post-conviction relief, absent exceptional circumstances.'" *Id.* (quoting *Hickey v. State*, 328 S.W.3d 225, 231 (Mo. App. E.D. 2010)).

Here, Payne acknowledges that he knowingly and voluntarily waived his right to testify, but he claims that he did so based upon advice from trial counsel, which he claims was unreasonable insofar as the basis for counsel's advice was unreasonable. The motion court found that trial counsel's advice was based upon three premises: (1) at the close of the State's evidence, she believed the State's case was weak and Payne's testimony was unnecessary; (2) any testimony from Payne denying the charges would have been cumulative to his entry of a not guilty plea; and (3) if he had testified, his prior convictions would have been put before the jury. The motion court therefore concluded that counsel's advice was based upon reasonable trial strategy. We agree.

To begin, as discussed in response to Payne's first point on appeal, trial counsel thoroughly impeached Victim by pointing out numerous inconsistencies in his description of events, and she successfully elicited detrimental admissions from Victim regarding those same descriptions. Thus, at the close of the State's evidence, it was entirely reasonable for counsel to determine that the State's case had been sufficiently weakened so as to render Payne's testimony unnecessary, especially where that testimony would have consisted primarily of denying the charges. Payne argues that counsel should have cited specific cases to Payne where defendants were convicted on less evidence. He further claims that his testimonial denials would have had a greater effect on the jury than his decision to plead not guilty. We find these claims to be merely another attempt to second-guess trial counsel's strategic decision. "Reasonable choices of trial strategy, no matter

11

how ill[-]fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." *Meuir*, 182 S.W.3d at 793 (quoting *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005)).

Finally, Payne faults counsel for relying on the fact that his prior convictions would have come before the jury, had he testified. But counsel's advice that Payne not testify in order to avoid revealing his prior convictions constitutes reasonable trial strategy. *See Morrison v. State*, 75 S.W.3d 893, 897 (Mo. App. S.D. 2002) (holding that trial counsel's advice that the defendant not testify to avoid revealing prior convictions was reasonable trial strategy).

Payne argues that his prior convictions—none of which involved sexual matters—could have been used to his advantage. Though this may have been an option, counsel's advice to the contrary is not rendered unreasonable merely because another potential strategy existed. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.

In any event, trial counsel testified that, when discussing the possibility of Payne testifying at trial, she did not believe "he was real excited to get up on the stand." Therefore, they decided to evaluate the case at the close of the State's evidence before deciding whether his testimony was needed. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland*, 466 U.S. at 691. It was wholly reasonable for counsel to advise Payne not to testify where he had already exhibited reluctance to do so and the two of them concluded that his testimony was unnecessary. Point III is denied.

12

In any event, "[e]ven if the movant did not receive competent advice, he or she must still prove prejudice." *Franklin v. State*, 156 S.W.3d 507, 512 (Mo. App. S.D. 2005). "There must be a reasonable probability that if movant would have testified, the result of the proceeding would have been different." *Id.*

Payne argues that, if he had testified, the jury would have been able to assess his credibility and could have come down on the other side of this "close case." This claim, however, is nothing more than speculation, as it does not demonstrate any reason why the jurors would have found Payne more credible than Victim, whom they believed despite significant impeachment. The jurors could have just as easily found Payne's testimony to be incredible, thus solidifying their conclusion as to his guilt. "Mere conclusory speculations of prejudice by Movant are not considered substantive evidence of counsel's ineffectiveness." *Woods v. State*, 458 S.W.3d 352, 360 (Mo. App. W.D. 2014) (quoting *Weekley v. State*, 265 S.W.3d 319, 323 (Mo. App. S.D. 2008)). Point IV is denied.

## Conclusion

Payne has failed to demonstrate that the motion court's judgment was clearly erroneous. Therefore, its decision is affirmed.

_____
Karen King Mitchell, Judge

Lisa White Hardwick, Presiding Judge, and
Anthony Rex Gabbert, Judge, concur.

13