

# Missouri Court of Appeals

## Southern District

### Division Two

| | |
|---|---|
| WILLIAM E. COPHER, | ) |
| | ) |
| Movant-Appellant, | ) |
| | ) |
| vs. | )     No. SD35473 |
| | )     Filed: March 15, 2019 |
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent-Respondent. | ) |

### APPEAL FROM THE CIRCUIT COURT OF CHRISTIAN COUNTY

Honorable Laura J. Johnson, Judge

## **AFFIRMED**

William E. Copher ("Copher"), appeals from a judgment of the motion court denying his amended Rule 29.15[1] motion, which claimed that trial counsel was ineffective for advising Copher not to testify in his own defense. Finding no merit to Copher's point relied on, we affirm.

---

[1] All rule references are to Missouri Court Rules (2018).

**Factual and Procedural Background**

Relevant to our disposition in the current appeal, the evidence adduced at trial was as follows. Victim and Copher had an intimate relationship. Copher would "at times" stay with Victim at her home.

On January 3, 2012, Victim had an appointment to perform community service as part of the terms of her probation. Copher did not believe her, instead declaring that she was going to see a male friend of hers. Copher became angry and accused Victim of cheating on him. He took Victim's cell phone and car keys.

Over the next several days, the couple had several more arguments, during which Copher physically assaulted Victim. Victim suffered a black eye; a busted lip; numerous cuts and abrasions on her body; cuts to her scalp from Copher stomping on her head; and burns on her legs, arms, and torso from hot butter splatters.[2] Copher threatened Victim with a pocketknife, holding it to her throat and threatening to "cut [her] face up[;]" lit a propane torch threatening to burn Victim's face so that "nobody would want [her] anymore[;]" and threatened to kill Victim with a hammer. Copher also hit Victim's dog when the dog tried to protect Victim, causing Victim to kick Copher in the face. Copher responded by repeatedly punching Victim in the face. Copher threatened that if Victim contacted police, he would kill her and dismember her body.

On the morning of January 5, 2012, Victim told Copher she had to attend her weekly meeting with her probation officer. Upon arrival at the probation office, Victim began crying. Her probation officer saw her black eye and noted that Victim was "very frazzled, crying, nervous[,]" had apparent blood in her hair, and had an injury to one of her ears. The probation officer took

---

[2] Victim also alleged that Copher choked her.

Victim to file an order of protection and to write out a statement for the sheriff's department, which Victim kept instead of leaving with the department.

Later that day, sheriff's deputies went to Victim's home to speak with her about the report. Deputies observed Victim's black eye, she was visibly scared and shaking, and told the deputies that she did not want to cooperate anymore because she was in fear for her life. Victim refused to file the report or allow photographs to be taken of her injuries. After checking the house to ensure Copher was not there, the deputies left.

As the deputies were traveling from the residence, a car carrying Victim's probation officer and other probation personnel flashed its lights at the patrol car to get it to stop. Deputies were told there was concern for Victim's safety, so they returned to Victim's residence. Victim's probation officer convinced her to give a report to the deputies, and have her injuries photographed. The deputies and probation officer also noted the house was in disarray, with broken mirrors throughout the house.

Copher was charged by amended felony information with the class C Felony of domestic assault in the second degree for choking Victim; the class D felony of unlawful use of a weapon (a knife); and the class D felony of domestic assault in the third degree for punching Victim in the face.

Trial commenced on September 9, 2013, with Victim, her probation officer, and law enforcement testifying. Before the State rested its case, the trial court inquired as to whether Copher wanted to testify in his own defense. The following colloquy took place:

> THE COURT: We're on the record. [Defense counsel], have you had [a] chance to visit with your client about his presenting any evidence?
>
> [DEFENSE COUNSEL]: Yes, Judge. And I have talked to him about his right not to testify. And I guess, I mean, he's decided not to testify. The State apparently has not rested yet.

THE COURT: Okay.

[DEFENSE COUNSEL]: So obviously he will have to make a final decision when the State has completely rested.

At the close of the State's evidence, the trial court asked Copher if he wanted to testify in his own defense, and Copher elected not to testify. The trial court then made the following record:

THE COURT: Mr. Copher, you heard the State rested their case, right? You heard that, that they rested their case?

DEFENDANT COPHER: Yeah. Yes, I heard they rested.

THE COURT: And, uh, you had earlier announced that you did not want to testify in your case, correct?

DEFENDANT COPHER: Correct. I don't want to testify in my case.

Copher was found guilty of unlawful use of a weapon and domestic assault in the third degree, but not guilty of domestic assault in the second degree. The trial court sentenced Copher, as a prior and persistent offender, to consecutive terms of seven years on each count. On direct appeal, this Court affirmed Copher's convictions and sentences. **State v. Copher**, 458 S.W.3d 832, 836 (Mo.App. S.D. 2015). Mandate issued on May 28, 2015.

On July 17, 2015, Copher timely filed his *pro se* "Motion to Vacate, Set Aside, or Correct Judgment and Sentence." The motion court appointed counsel on July 28, 2015, and counsel entered his appearance on August 24, 2015. Following a request, the motion court gave an additional thirty days for counsel to file an amended motion, and counsel timely filed an amended motion on October 26, 2015.

In his amended motion, Copher asserted, in part, that trial counsel was ineffective for failing to advise him that under the facts and circumstances of the case, his only viable defense to

4

the unlawful use of a weapon charge and the domestic assault charges was for Copher to take the stand and testify that he struck Victim in self-defense.

An evidentiary hearing was held on December 6, 2017 and January 26, 2018. Trial counsel testified his trial strategy was that Victim lacked sufficient physical evidence to support the second-degree assault charge because there were no marks on Victim's neck and only a "couple other marks on her[,]" which then demonstrated that she was not believable, that it was a "mutual two people fighting," and not Copher attacking Victim. Trial counsel stated that even if arguing it was a "mutual fight" had the effect of conceding the third-degree domestic assault count, he believed that the defense argument that Victim was not credible was the best argument for the remaining counts.

Trial counsel stated he did not remember whether or not they discussed self-defense, although that would be "typical" in an assault case. Trial counsel "certainly" would have explained that the only way to establish self-defense in a case, with only two people involved, generally would be for Copher to testify.

Trial counsel further testified that under the circumstances of the case, it was "pretty clear that I would have advised [Copher] not to testify, but it would have been his choice if he wanted to." Trial counsel stated that Copher could be "very animated" and "very forceful" when trying to make a point, and he did not believe this "would necessarily have made the best image that I would want from him to the jury." Copher also had a significant criminal history, including domestic assault convictions, which would have been introduced had Copher testified and "would have been pretty damaging[,]" and could have opened the door to damaging statements Copher had made to law enforcement.

Trial counsel testified that his trial strategy resulted in Copher's acquittal on the second degree domestic assault charge, which allowed Copher to avoid a possible 15-year sentence on that count alone.

On March 7, 2018, the motion court issued "Findings of Fact, Conclusions of Law and Judgment" denying Copher's motion. The motion court found that there was no evidence that trial counsel refused to let Copher testify or coerced Copher into not testifying, and that trial counsel's advice to Copher not to testify was reasonable trial strategy. The motion court also concluded that Copher failed to prove that there was a reasonable probability of a different result had he testified. This appeal followed.

In one point, Copher asserts the motion court erred in denying ineffective assistance of counsel for trial counsel advising Copher not to testify because it was unreasonable when Copher's testimony could inject the evidence necessary for a self-defense instruction.

**Standard of Review**

This Court reviews the denial of post-conviction relief to determine whether the motion court's findings of fact and conclusions of law are clearly erroneous. A judgment is clearly erroneous when, in light of the entire record, the court is left with the definite and firm impression that a mistake has been made. The motion court's findings are presumed correct. This Court defers to the motion court's superior opportunity to judge the credibility of witnesses.

To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test to prove his or her claims. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, Movant must demonstrate: (1) his trial counsel failed to exercise the level of skill and diligence reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure. *Id.* at 687, 104 S.Ct. 2052.

Movant must overcome the strong presumption trial counsel's conduct was reasonable and effective. To overcome this presumption, a movant must identify specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance. Trial strategy decisions may be a basis for finding ineffective assistance of counsel only if that

6

decision was unreasonable. Strategic choices made after a thorough investigation of the law and the facts relevant to plausible opinions are virtually unchallengeable.

To establish relief under *Strickland*, a movant must prove prejudice. Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Anderson v. State*, 564 S.W.3d 592, 600–01 (Mo. banc 2018) (internal quotations and citations omitted).

## Analysis

In his point relied on, Copher argues that the motion court clearly erred in rejecting his Rule 29.15 motion, in that trial counsel was ineffective when he advised Copher not to testify when trial counsel's trial strategy was to claim self-defense. Copher suggests that trial counsel was obliged to tell him that "their defense strategy would be successful only if [] Copher got on the stand and testified[.]"

The motion court's findings on this issue frame (and inform) our review:

Movant claims that trial counsel was ineffective for failing to advise Movant that he needed to testify to support his claim of self-defense. Generally, trial counsel's advice whether to testify is a matter of trial strategy, and does not constitute a ground for post-conviction relief, absent exceptional circumstances.

At the evidentiary hearing, trial counsel testified that he would have advised Movant not to testify given Movant's extensive criminal history but would have told Movant that the decision was his choice. Furthermore, if Movant had testified he risked opening the door to the admissibility of incriminating statements he made to an officer that had been suppressed by the trial court. Finally, trial counsel testified that, in advising Movant not to testify, he considered Movant's demeanor, which was "animated," and how he would appear on the witness stand. There was no evidence that trial counsel refused to let Movant testify or coerced Movant into not testifying. The Court finds that it was reasonable trial strategy to advise Movant not to testify in light of his criminal history, the risk of rendering previously excluded statements admissible, and Movant's demeanor

After the State rested in Movant's criminal trial, the trial court inquired about whether he would testify. When the trial court asked whether Movant wanted to testify, Movant replied unequivocally "I don't want to testify in my case." The trial court advised Movant that it was his decision to make, and Movant repeated: "I don't want to testify." The Court finds that Movant was fully advised of his right to testify and that the decision whether or not to testify was his choice. The record supports that conclusion that Movant was properly advised of his right to testify, that trial counsel appropriately advised Movant of reasons why he believed Movant should not testify, and that Movant voluntarily made the decision not to testify.

Furthermore, Movant presents no evidence to prove that if he would have testified, the result of the proceeding would have been different. Accordingly, this claim for relief fails.

(internal citations omitted).

As our Western District explained:

The decision whether or not to place a defendant in the witness chair is a difficult one. It has been repeatedly held that, when a criminal defendant has knowingly and voluntarily waived his right to testify, absent extraordinary circumstances, an ineffective assistance of counsel claim will not lie in defense counsel's decision not to call him as a witness. Although the decision to testify rests solely with the defendant, a defendant is entitled to receive reasonably competent advice regarding his decision to testify. Therefore, trial counsel's advice whether to testify is generally a matter of trial strategy, and does not constitute a ground for post-conviction relief, absent exceptional circumstances.

***Payne v. State***, 509 S.W.3d 830, 838 (Mo.App. W.D. 2016) (internal quotations and citations omitted). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." ***Strickland***, 466 U.S. at 689, 104 S.Ct. 2052.

If Copher took the stand, and was as thoroughly impeached and discredited as trial counsel reasonably feared, "[t]he jurors could have just as easily found [Copher's] testimony to be incredible, thus solidifying their conclusion as to his guilt" of the more serious charge. ***Payne***, 509 S.W.3d at 839.

8

Copher fails to demonstrate that the motion court clearly erred in rejecting his Rule 29.15 motion for post-conviction relief.  Point denied.

The judgment of the motion court is affirmed.

WILLIAM W. FRANCIS, JR., P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - CONCURS

MARY W. SHEFFIELD, J. - CONCURS