

# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| TERRELL A. SMITH, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD86187 |
| | ) | |
| STATE OF MISSOURI, | ) | Filed: September 24, 2024 |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY**
**THE HONORABLE PATRICK K. ROBB, JUDGE**

**BEFORE DIVISION THREE: THOMAS N. CHAPMAN, PRESIDING JUDGE,**
**LISA WHITE HARDWICK, JUDGE, ALOK AHUJA, JUDGE**

Terrell Smith appeals the denial of his Rule 29.15 motion after he was convicted of first-degree murder and armed criminal action. He contends the motion court clearly erred in denying his claim that trial counsel was ineffective for giving insufficient advice before he decided not to testify at trial. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY[1]

In September 2017, Smith shot and killed Victim, his live-in romantic partner whom he had physically abused during their relationship. Afterwards, Smith threw the gun into a ravine. Smith gave several different stories to the police about how Victim was shot in the back of the head, including that "someone" shot her; Victim accidentally shot herself when she and Smith were fighting over the gun; Victim purposely shot herself; and Victim was accidentally shot when the gun "just went off" after he slammed the gun down on an equalizer on top of a speaker.

After he was charged with first-degree murder and armed criminal action and was in jail awaiting trial, Smith told other versions of the shooting to people in recorded phone calls. Smith said Victim was shot when: he was cleaning the gun, the butt of the gun slipped, he grabbed the gun, and the gun went off; he put the gun on a shelf, the gun fell off the shelf and went off; and the gun went off when he was putting it on a shelf because he was just waking up and was under the influence.

During his jury trial, Smith presented no evidence. His defense theory was the shooting was accidental and was caused by his improperly handling a loaded firearm. Defense counsel asked the jury to find him guilty of second-degree involuntary manslaughter. The jury found Smith guilty of first-degree murder and armed criminal action. The court sentenced him to life in prison without the possibility of parole for

---

[1] The underlying facts are taken from the unpublished memorandum supplementing the order issued to Smith in his direct appeal, *State v. Smith,* 603 S.W.3d 924 (Mo. App. 2020), without further attribution.

first-degree murder and a term of 20 years for armed criminal action, to be served concurrently. We affirmed his convictions and sentences on direct appeal in *State v. Smith*, 603 S.W.3d 924 (Mo. App. 2020).

Smith filed a *pro se* Rule 29.15 motion, which was later amended by appointed counsel. In his amended motion, Smith asserted trial counsel was ineffective because, when she advised him of the pros and cons of testifying, she did not include in her advice how important his testimony was to the case and how the defense could use his prior convictions to his benefit if he did testify. He argued his testimony would have provided a viable defense because it would have explained what occurred and why he gave different versions when he spoke to people about the incident. He asserted that, if he had testified, there is a reasonable probability the verdict would have been different. Following an evidentiary hearing, the motion court entered its judgment denying Smith's claim. Smith appeals.

### STANDARD OF REVIEW

We review the denial of a postconviction motion for clear error. Rule 29.15(k). The motion court's findings and conclusions are clearly erroneous only if a review of the entire record leaves us with a definite and firm impression that a mistake was made. *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019). We presume the motion court's findings and conclusions are correct. *Id.* Even if the motion court's stated reason for its ruling is incorrect, however, we will affirm the judgment if it is sustainable on other grounds. *Swallow v. State*, 398 S.W.3d 1, 3 (Mo. banc 2013). We defer to the

3

motion court's superior opportunity to judge the witnesses' credibility.  *Shockley*, 579 S.W.3d at 892.

## TIMELINESS OF SMITH'S *PRO SE* MOTION

Before we can address the merits of Smith's appeal, we must address the State's contention that the motion court should have dismissed Smith's amended motion, and we should dismiss his appeal, because his *pro se* motion was inexcusably untimely filed.  A *pro se* postconviction motion must be filed within 90 days after the issuance of the appellate court's mandate on direct appeal.  Rule 29.15(b).  The failure to file a motion within this time "shall constitute a complete waiver of any right to proceed under this Rule 29.15 and a complete waiver of any claim that could be raised in a motion filed pursuant to this Rule 29.15."  *Id.*  "The deadline and 'complete waiver' provisions of Rule 29.15(b) are mandatory and constitutional," and both the motion court and the appellate court have a duty to enforce them.  *Price v. State*, 422 S.W.3d 292, 297 (Mo. banc 2014).

We issued our mandate in Smith's direct appeal on August 19, 2020.  Smith filed his *pro se* motion 176 days later, on February 24, 2021.  Because Smith's *pro se* motion was untimely filed, he had to prove "by a preponderance of the evidence . . . that he falls within a recognized exception to the time limits."  *Watson v. State*, 520 S.W.3d 423, 429 (Mo. banc 2017) (citation omitted).  Rule 29.15 does not contain exceptions excusing late filings, but courts have allowed the late filing of a *pro se* motion "when rare circumstances outside the movant's control justify late receipt of the motion."  *Id.* (citation omitted).  If an inmate drafts the motion and "does all he reasonably can do to

ensure that it is timely filed under Rule 29.15(b), any tardiness that results solely from the active interference of a third party beyond the inmate's control may be excused and the waivers imposed by Rule 29.15(b) not enforced." *Price*, 422 S.W.3d at 301.

Courts have excused the untimely filing of a *pro se* motion based on this exception when an inmate timely mailed the motion to the wrong circuit court, and when an inmate timely mailed the motion to an outdated address for the circuit court and the court's postal forwarding order lapsed the day before his motion arrived. *Id.* (citing *Nicholson v. State*, 151 S.W.3d 369 (Mo. banc 2004), and *Spells v. State*, 213 S.W.3d 700 (Mo. App. 2007)). Additionally, courts have indicated that the exception may apply where circumstances beyond inmates' control prevented them from accessing a law library or a Form 40 and timely filing their *pro s*e motion. *See Ross v. State*, 659 S.W.3d 368, 375 (Mo. App. 2023) (stating that, while such allegations do "not squarely fit into the third-party active interference" case law, "they are also not squarely foreclosed by it"). *See also Trapp v. State*, No. ED111699, 2024 WL 3942141, at *5 (Mo. App. Aug. 27, 2024). This exception "arises out of the practical reality that an inmate cannot comply with Rule 29.15 without relying on a third party to some extent." *Price*, 422 S.W.*3d* at 302. Therefore, when an inmate writes his initial *pro se* Rule 29.15 motion and "takes every step he reasonably can within the limitations of his confinement to see that the motion is filed on time, a motion court may excuse the inmate's tardiness when the active interference of a third party beyond the inmate's control frustrates those efforts and renders the inmate's motion untimely." *Id.*

During the evidentiary hearing on his amended Rule 29.15 motion, Smith offered his deposition testimony in which he stated he was incarcerated at the Jefferson City Correctional Center between July 2020 and October 2020. He stated he began working on his *pro se* motion while his direct appeal was pending, and he had his *pro se* motion notarized on November 23, 2020. He testified he never received this court's mandate in the mail after it was issued on August 19, 2020, though, so in January 2021, he wrote to his appellate attorney, who informed him his *pro se* motion was past due. Smith testified that, as soon as he learned the mandate had been issued and his *pro se* motion was late, he "immediately sent" his *pro se* motion to the circuit court. Smith said the only reason he did not file his *pro se* motion by the 90-day deadline was because he did not have the mandate, and if he had known the mandate was issued on August 19, 2020, he would have had his *pro se* motion notarized and filed on time.

To support his testimony, Smith offered the affidavit of a Department of Corrections employee who worked in the mailroom of the Jefferson City Correctional Center. She stated the mailroom kept a record of incoming legal mail received by inmates, and Smith did not receive any legal mail from July 1, 2020, through October 20, 2020. In its judgment denying Smith's amended Rule 29.15 motion on its merits, the motion court found Smith was excused from his untimely filing because he did not receive notice that the mandate had been issued until January 2021, and he was incarcerated during the relevant time period.

The motion court did not clearly err in finding Smith's untimely filing was excused. Smith's testimony, which the motion court was free to accept, indicated he took

6

every step he reasonably could within the limitations of his confinement to see that his *pro se* motion was filed on time. He began drafting the motion while his direct appeal was pending. Because the court advised him at sentencing he had to file the motion within 90 days of the issuance of our mandate, he was waiting to file it until he received notice of the issuance of the mandate, which the evidence established he did not receive from *any* source. As the Supreme Court noted in *Moore v. State*, 328 S.W.3d 700, 703 (Mo. banc 2010), "[u]nder Rule 30.24(b), the clerk of the appellate court has the duty to inform the appellant of the mandate's issuance by sending a copy of the mandate for the appellant to the department of corrections." The clerk of this court fulfilled her duty by sending Smith a copy of the mandate on August 19, 2020, the day it was issued. During the evidentiary hearing, the prosecutor did not dispute that Smith never received it, stating, "I don't doubt what these individuals say from the Department of Corrections." The prosecutor added, "And the only thing I can say is our office has had problems with the mail in the last couple of years. . . . We've encountered that several times during the pandemic." Smith had to rely on a third party whom he could not control—the postal service—to receive notice of the issuance of the mandate. *See Price*, 422 S.W.3d at 303. The postal service's failure to deliver the notice of the issuance of the mandate to Smith constituted active third-party interference beyond Smith's control that frustrated his efforts and rendered his motion untimely. Under these circumstances, Smith's untimely filing of his *pro se* motion was excused.

**ANALYSIS**

Looking now at the merits of Smith's appeal, he contends the motion court clearly erred in denying his claim that trial counsel was ineffective for giving him insufficient advice before he decided not to testify. Smith argues trial counsel failed to tell him the benefits of having him testify. He insists he was prejudiced because his testimony was the only evidence the defense could have presented that would have resulted in a different verdict. The motion court denied this claim after finding the transcript of Smith's statements to the court when he was questioned at trial about his decision not to testify indicated that he had talked to trial counsel, he fully understood his right to testify, and he made the decision not to testify. The motion court also found Smith failed to show that, if he had testified, there is a reasonable probability the outcome of the trial would have been different.

To obtain postconviction relief on an ineffective assistance of counsel claim, Smith had to establish, by a preponderance of the evidence, that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under the same or similar circumstances and that he was thereby prejudiced. *Shockley,* 579 S.W.3d at 892 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). There is a "strong presumption" that trial counsel's conduct was "reasonable and effective," and "[t]o overcome this presumption, a movant must identify 'specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance.'" *Id*. (citation omitted). To demonstrate prejudice, Smith had to show that "there is a *reasonable probability* that, but for counsel's unprofessional errors,

8

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Deck v. State*, 68 S.W.3d 418, 426 (Mo. banc 2002) (quoting *Strickland*, 466 U.S. at 694)). Smith had to prove both the performance and prejudice prongs to prevail, and if he failed to satisfy either prong, we need not consider the other. *Cone v. State*, 316 S.W.3d 412, 415 (Mo. App. 2010).

In his deposition testimony offered during the evidentiary hearing, Smith stated trial counsel advised him not to testify because the State could introduce evidence of his criminal background. Smith said this advice was a "major factor" in his decision not to testify. Smith testified trial counsel never discussed with him that he could use the fact that he pled guilty to all of his prior convictions as evidence that, when he is guilty of something, he takes responsibility for it. Also, Smith said trial counsel never told him that he could use his prior convictions to explain that he threw the gun in the ravine and told police "something different" than what he would testify to at trial because he was afraid of the police. Smith testified trial counsel did not tell him his "only realistic opportunity" not to get convicted of first-degree murder was for him to testify. Smith testified that, had trial counsel advised him of these matters, he would have opted to testify, and he would have told the jury that Victim was shot when she handed the gun to him while he was sitting on their bed, he "flopped off the bed," put the gun on a speaker, and the gun just "went off and it hit her."

Smith's trial counsel testified by deposition that she discussed Smith's right to testify, explained the State could impeach him with his prior convictions, and advised

him that her concerns about his testifying were due to the type of prior convictions he had. Specifically, trial counsel believed hearing about Smith's prior convictions would make the jury unsympathetic to him because his prior convictions included cruelty to a child and cruelty to animals. Trial counsel stated she never discussed with him that: he could use his guilty pleas to his prior convictions as evidence that, when he's guilty of something, he takes responsibility for it; he could use his prior convictions to explain why he told the police something different and why he threw his gun in the ravine; or the only realistic opportunity he had not to be convicted of first-degree murder was to testify.

Given that these purported "benefits" to Smith's testifying were dubious at best, trial counsel's failure to cite them as reasons to testify was not outside the wide range of professional competent assistance. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Payne v. State*, 509 S.W.3d 830, 839 (Mo. App. 2016) (quoting *Strickland*, 466 U.S. at 689). Moreover, any possible benefit to Smith's testifying at trial was far outweighed by the harm that would have been caused by the jury's hearing about his prior convictions for cruelty to children and animals and the jury's hearing yet another version – to add to Smith's many other versions – of how Victim was shot. Trial counsel's advice to Smith not to testify was reasonable trial strategy. *Id*. The motion court did not clearly err in denying this claim. Point denied.

## CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

All Concur.

11