

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| ANTOINE L. ELLIS, | ) |
| | ) |
| Appellant, | ) |
| | ) WD86864 |
| v. | ) |
| | ) OPINION FILED: |
| | ) March 25, 2025 |
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Charles H. McKenzie, Judge**

**Before Division Two:** Janet Sutton, Presiding Judge, and
Alok Ahuja and Mark D. Pfeiffer, Judges

Mr. Antoine Ellis ("Ellis") appeals the judgment of the Circuit Court of Jackson

County, Missouri ("motion court"), denying, after an evidentiary hearing, his motion for

post-conviction relief ("PCR") pursuant to Rule 29.15, which asserted that his trial

counsel's assistance was constitutionally ineffective. We affirm.

## Facts and Procedural History[1]

After a jury trial, Ellis was convicted of two counts of statutory rape in the first

degree and one count of enticement of a child and was sentenced to two consecutive

---

[1] "On appeal from the motion court's denial of a Rule 29.15 motion, we view the
facts in the light most favorable to the underlying criminal conviction as those facts bear

terms of life imprisonment without parole and a concurrent sentence of fifteen years'

imprisonment. We affirmed Ellis's convictions and sentence in *State v. Ellis*, 637 S.W.3d

338 (Mo. App. W.D. 2021). Within our ruling on Ellis's direct appeal, we itemized

details of the overwhelming evidence of Ellis's guilt associated with his crimes involving

his young victim, a thirteen-year-old female ("Victim").[2] *Id.* at 341-43. Though we will

not repeat the entirety of the details of Ellis's underlying crimes in today's ruling, we

recite the following details from *State v. Ellis*, without further attribution, that are

relevant to the motion court's judgment.

Victim was born in 2002. She first met Ellis and his girlfriend ("Girlfriend")

when she was twelve years old. Ellis was friends with Victim's stepfather ("Stepfather").

Ellis and Girlfriend were treated like family and visited every weekend. Victim's mother

("Mother") testified that Victim and Ellis developed a "strange" relationship in which

they both claimed to be best friends with each other.

Ellis's sexual advances to Victim initially involved groping Victim's buttocks,

pubic area, and breasts. The groping escalated to sexual intercourse, beginning in July

2015 with an incident in which Ellis had sexual intercourse with Victim after covering

her head with a pillow. Afterwards, Ellis told Victim he would hurt her if she told

---

upon the motion court's judgment." *Morrison v. State*, 619 S.W.3d 605, 607 n.1 (Mo. App. W.D. 2021) (citing *McFadden v. State*, 553 S.W.3d 289, 296 n.2 (Mo. banc 2018)).

[2] Pursuant to the directive of section 509.520.1(4)-(5), (7) (Supp. IV 2024), we do not use the names of any victims, witnesses, or minors in this opinion, other than parties to the underlying litigation. Furthermore, pursuant to section 595.226.1 (Supp. IV 2024), we do not disclose any information that could be used to identify or locate the victim of a sex crime. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through June 9, 2022, unless otherwise indicated.

2

anyone. The second incident of sexual intercourse occurred shortly after Stepfather moved out of the family home in December 2015, when Victim was home alone while getting ready for school early in the morning.[3] Ellis told Victim that Girlfriend was in jail[4] and that he needed to talk to her in her bedroom; that conversation resulted in Ellis forcing Victim to perform oral sex on him after which Ellis had sexual intercourse with Victim. Again, Ellis threatened Victim not to tell anyone.

After the second sexual encounter, Ellis told Victim that he loved her and wanted to marry her. Phone records indicate that between January 14, 2016, and February 20, 2016, Ellis and Victim exchanged over 6,000 text messages and spoke on phone calls that lasted as long as 243 minutes.

After Girlfriend, Stepfather, and Mother became aware of Ellis sending sexually explicit text messages to Victim, Mother confronted Victim, but Victim did not share the sexual details of the relationship because she was scared. Instead, she deleted all of her text messages and communications with Ellis, and then she moved to an Xbox tablet. Again, Girlfriend,[5] Mother,[6] and Stepfather became aware of the sexually explicit

---

[3] Because Ellis was previously convicted of statutory rape relating to incidents in 2007 involving a different twelve-year-old victim, Ellis was under lifetime supervision and wore a GPS ankle monitor. That GPS monitor confirmed that Ellis was at Victim's house many times, including multiple times in January 2016 at 6:47 a.m. and 6:48 a.m.

[4] A subsequent text message between Ellis and Victim specifically mentioned Girlfriend: "I miss when [Girlfriend's first name] was locked up."

[5] Victim testified that Girlfriend confronted Victim through the messages, telling Victim that Ellis "had a wife" and later identifying that wife as "[Girlfriend's first name]."

[6] Mother accessed the tablet while Victim was sleeping and saw "very explicit" messages. One message referenced the sender's "tongue ring," and Ellis had such a tongue ring at the time.

messages Ellis had sent to Victim and, on March 23, 2016, took the Xbox tablet to law enforcement, which resulted in the recovery of over 300 messages sent between Ellis and Victim over the course of the two previous days.

In 2018, Victim testified that she was no longer scared of Ellis and, at that time, she first disclosed Ellis's sexual contact with her. Victim[7] testified to all of the details of the sexual contact and the messaging between herself and Ellis at trial.

While awaiting trial, Ellis was recorded conversing with Girlfriend in a series of incriminating jail calls.

At trial, Ellis confirmed he understood his right to testify, confirmed he had spoken with his attorney regarding the decision to testify, and confirmed he was freely making the decision *not* to testify.

After Ellis's direct appeal to this Court was denied, he filed a PCR motion pursuant to Rule 29.15,[8] which claimed in relevant part that his trial counsel provided ineffective assistance when advising Ellis not to testify in his own defense. On May 19, 2023, an evidentiary hearing ("PCR hearing") was held before the motion court.

At the PCR hearing, both of Ellis's trial attorneys testified. Ellis's lead counsel ("Lead Counsel") testified, via deposition, that she always advises her clients of the right to testify, that if they do testify they are required to tell the truth, and that the decision whether or not to testify is entirely theirs. Ellis's co-counsel ("Co-Counsel") testified he

---

[7] Victim testified that Ellis would refer to himself in the text and Xbox messages as "Daddy," and she used the name for him because he liked it. Victim testified she only referred to Stepfather as her "stepdad" and never as "daddy." Both Mother and Stepfather confirmed this in their testimony.

[8] All rule references are to I MISSOURI COURT RULES – STATE 2022.

was present when Lead Counsel advised Ellis of his right to testify, confirming that she told Ellis it was his decision whether or not to testify and that it was her proffered advice that Ellis should not testify. Co-Counsel testified it was a matter of trial strategy whether Ellis should or should not testify and agreed with Lead Counsel's advice that Ellis should not testify. Co-Counsel also testified that Ellis was told that he could be severely impeached with evidence negatively impacting his credibility if he chose to testify.

Ellis testified that Lead Counsel discussed with him the topic of whether he should testify, including her reasoning for recommending he not testify. Ellis testified he followed her recommendation and chose not to testify "because of the jail phone calls" despite wanting to testify. Ellis acknowledged that, in fact, the State did *not* play the jail phone calls at trial in the State's case-in-chief. Ellis also confirmed that he had adequate opportunity to consult with his counsel about his right to testify, including discussing with his attorney the pros and cons in making the decision, and that it was his decision not to testify.

On December 6, 2023, the motion court issued "Findings of Fact, Conclusions of Law, and Judgment" denying Ellis's PCR motion. The Judgment contained the following findings, in pertinent part:

> The [motion court] finds the testimony of Trial Counsel that it was a matter of trial strategy to advise [Ellis] not to testify to be credible. The [motion court] finds that the strategy to advise [Ellis] not to testify to be reasonably competent advice. Therefore, the [motion court] finds that [Ellis] has failed to prove by a preponderance of the evidence that Trial Counsel was ineffective . . . [neither has Ellis] shown by a preponderance of the evidence that he was prejudiced by him not testifying. [Ellis's] assertions that the Jury would have acquitted him if he had testified [are] without merit. The State's evidence in the case was strong.

5

Ellis timely appealed.  In his sole point on appeal, Ellis argues the motion court clearly erred in denying his claim that his counsel provided constitutionally ineffective assistance by advising him not to testify.

**Standard of Review**

"Appellate review of a motion court's dismissal of a post-conviction relief motion is limited to determining whether the findings and conclusions of law are clearly erroneous."  *Propst v. State*, 535 S.W.3d 733, 735 (Mo. banc 2017) (citing *Price v. State*, 422 S.W.3d 292, 294 (Mo. banc 2014)); *see also* Rule 29.15(k).  To find that a decision was clearly erroneous, this Court must form a "definite and firm impression that a mistake has been made after a review of the entire record."  *Propst*, 535 S.W.3d at 735 (citing *Price*, 422 S.W.3d at 294).  "The motion court's findings of fact and conclusions of law are presumed to be correct."  *Beck v. State*, 637 S.W.3d 545, 551 (Mo. App. W.D. 2021) (quoting *Hays v. State*, 360 S.W.3d 304, 309 (Mo. App. W.D. 2012)).  We "defer[] to the [motion] court's factual findings and credibility determinations.  As such, this Court accepts the [motion] court's findings as to trial counsel's knowledge and strategic decisions."  *Zink v. State*, 278 S.W.3d 170, 178 (Mo. banc 2009) (citations omitted).

Where the judge finding no prejudice in a postconviction relief proceeding was also the presiding judge at trial, as here, our Supreme Court has recently concluded, "this vantage can give the motion court powerful insight into the issues raised in a postconviction proceeding."  *Flaherty v. State*, 694 S.W.3d 413, 423 (Mo. banc 2024).  "The additional deference due a judge who also presided over the criminal trial weighs strongly in favor of affirming the motion court's finding that [the movant in a

6

postconviction relief proceeding] was not prejudiced by counsel's deficient performance." *Id.*

## Analysis

"To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test." *Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, the movant must demonstrate: "(1) his trial counsel failed to exercise the level of skill and diligence that a reasonably competent trial counsel would in a similar situation, and (2) he was prejudiced by that failure." *Id.* (citing *Strickland*, 466 U.S. at 687). If the movant fails to prove either prong, relief cannot be granted. *Hecker v. State*, 677 S.W.3d 507, 512 (Mo. banc 2023). And if the movant fails to satisfy either prong, we need not address the other. *Staten v. State*, 624 S.W.3d 748, 750 (Mo. banc 2021); *Shores v. State*, 674 S.W.3d 127, 133 (Mo. App. W.D. 2023). Thus, "[i]f it is easier to dispose of the ineffectiveness claim on the ground of lack of sufficient prejudice," we may begin our analysis with the second prong. *Strickland*, 446 U.S. at 697.

Here, we begin our analysis by addressing the prejudice prong, finding that there is simply no prejudice irrespective of any complaint Ellis had of his trial counsel.

To establish the prejudice prong, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "In making this determination, a

7

court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." *Id.* at 695. "[S]imply showing that the alleged error had a conceivable effect on the trial outcome is not sufficient; instead the [movant] must show that, absent the error, there is a reasonable probability that he would have been found not guilty." *Johnson v. State*, 189 S.W.3d 640, 645 (Mo. App. W.D. 2006).

In *McCoy v. State*, 431 S.W.3d 517, 522 (Mo. App. E.D. 2014), the movant failed to show the alleged error—that movant was advised by counsel not to testify even though he desired to personally present his alibi defense—affected the outcome of his trial because "the jury still heard arguments and testimony based on the same alibi . . . that [m]ovant could not have committed the shootings because he was living in another state when the crimes occurred." Thus, because the jury was presented the alibi defense, the movant failed to show that, absent his testimony, the outcome of his case would have been different. *Id.*

Here, Ellis has failed to show he suffered prejudice when he did not testify at trial, nor has he provided evidence amounting to a reasonable probability he would have been found not guilty had his testimony been introduced at trial. In fact, Ellis's stated reason for the necessity of his testimony—an alternative suspect defense targeted at Stepfather— had already been communicated to the jury throughout trial. Through skillful cross-examination of the State's witnesses, Ellis's trial counsel presented numerous pieces of evidence casting Stepfather as an alternative perpetrator of the charged crimes. Though Ellis's testimony at trial could have corroborated some of the evidence targeting Stepfather as the perpetrator of the crimes, it also would have enabled the State to present

8

damning impeachment evidence that would have undermined Ellis's credibility—the very evidence that Ellis's lawyers successfully kept out of the trial.

Just like in *McCoy*, where the jury had already heard testimony based on the defendant's alibi defense, here, the jury heard substantial testimony based on Ellis's alternative suspect defense. There simply is not a reasonable probability Ellis's testimony would have changed the outcome of trial.

This is especially true where the movant "does not demonstrate any reason why the jurors would have found [the defendant] more credible than [the] [v]ictim." *Payne v. State*, 509 S.W.3d 830, 839-40 (Mo. App. W.D. 2016). Furthermore, it is just as plausible that the jurors could find a defendant's "testimony to be incredible, thus solidifying their conclusion as to his guilt." *Id.* This logic applies here, as Ellis only offers conclusory speculations of prejudice without a *single* reason as to *how* introducing his testimony would have created a reasonable probability of a not-guilty verdict.

Additionally, Ellis's argument ignores the overwhelming evidence of his guilt. "Where . . . there is overwhelming evidence of guilt, such that it cannot be reasonably said that, but for the challenged actions of trial counsel, the jury would have found the movant not guilty . . . the movant suffers no prejudice." *McCoy*, 431 S.W.3d at 522 (alteration in original) (internal quotation marks omitted) (quoting *Dawson v. State*, 315 S.W.3d 726, 733 (Mo. App. W.D. 2010)). In *McCoy*, the court found "overwhelming evidence of guilt" where four eyewitnesses placed the defendant at the scene of a shooting and identified him as the shooter, testimony was introduced that the defendant

used a rifle in the shooting, and ballistics evidence showed the bullets that struck the victim were fired from a rifle. *Id.*

Here, Victim testified at trial that it was Ellis who raped her on both occasions and described in detail the traumatic events. This testimony was corroborated by Ellis's GPS ankle bracelet, which placed him at Victim's residence on several early mornings around the date and time Victim testified the second statutory rape incident occurred. Victim also testified that Ellis was the person sending the sexually explicit text messages to her. This testimony is further corroborated by the specific details in the text messages: the mention of Ellis's "tongue ring"; the fact that Victim called Ellis "Daddy" but solely called Stepfather "stepdad"; the messages between the perpetrator and Victim that referred to the perpetrator's girlfriend by name as the perpetrator's "wife"; and the message that mentioned the perpetrator's girlfriend being in jail. Additionally, there were over 6,000 calls, texts, or pictures sent between Victim and Ellis's phone within a short period of time. This evidence presented the jury an overwhelming impression of Ellis's guilt.

The motion court did not clearly err in concluding that Ellis failed to meet his burden of establishing the *Strickland* prejudice prong.[9]

---

[9] *Ex gratia*, Ellis likewise cannot meet his burden of establishing the *Strickland* performance prong.

"As a general matter, an attorney's advice regarding whether or not a defendant should testify is a matter of trial strategy." *Davis v. State*, 486 S.W.3d 898, 917 (Mo. banc 2016) (internal quotation marks omitted) (quoting *State v. George*, 937 S.W.2d 251, 257 (Mo. App. E.D. 1996)). If a movant later claims "ineffective assistance of counsel regarding such advice," it will not be a ground for relief unless there are "exceptional circumstances." *Id.* As this Court has stated:

**Conclusion**

The motion court's judgment denying Ellis's PCR motion is affirmed.

_____
Mark D. Pfeiffer, Judge

Janet Sutton, Presiding Judge, and Alok Ahuja, Judge, concur.

---

> The decision whether or not to place a defendant in the witness chair is a difficult one. It has been repeatedly held that[,] when a criminal defendant has knowingly and voluntarily waived his right to testify, absent extraordinary circumstances, an ineffective assistance of counsel claim *will not* lie in defense counsel's decision not to call him as a witness. [A]lthough the decision to testify rests solely with the defendant, a defendant is entitled to receive reasonably competent advice regarding his decision to testify. Therefore, trial counsel's advice whether to testify is [generally] a matter of trial strategy, and *does not* constitute a ground for post-conviction relief, absent exceptional circumstances.

*Payne v. State*, 509 S.W.3d 830, 838 (Mo. App. W.D. 2016) (alteration in original) (emphasis added) (internal citations and quotation marks omitted).

Here, Ellis's attorneys prudently advised Ellis not to testify in order to avoid damning impeachment evidence from being presented to the jury at trial. And, Ellis has not identified any exceptional circumstances contradicting the wisdom of this advice.

11